PENNSYLVANIA R. CO. v. JENNIE ZINK.

ERROR TO THE COURT OF COMMON PLEAS OF HUNTINGDON
COUNTY.

Argued April 23, 1889—Decided May 6, 1889.

*(a)* In an action by a widow to recover damages for the death of her hus-
band, it appeared that decedent, who had been a brakeman in defend-
ant's yards for several years, was directed to take a train of platform cars
loaded with lumber and pushed by an engine in the rear, up to some
other cars on a siding 300 yards distant, the siding being straight and
up grade.

*(b)* Decedent put his left foot into the iron stirrup at the right hand side of
the front end of the front car, his right foot on the bumper, and one
of his arms over the side of the box of the car, to hold himself on, and
rode in that position until the front car became derailed, and the front
end of it, veering to the right, caught him between a board pile and the
car and so injured him that he died.

*(c)* This board pile was one of a series quite close together, beginning
about 20 feet from where decedent took charge of the train, and at a
distance from the side of the car variously estimated at from 20 to 40
inches.    The derailment was alleged to have been due to rotten ties, but
this was disputed.    Decedent could have ridden on the bumper of the
car, which did not strike the board pile.    There was evidence that de-
cedent could not use the brake or signal the engineer from where he
was riding.

1. Upon the foregoing facts, the court below properly refused to charge
that decedent was guilty of contributory negligence, in taking the po-
sition on the car above described, and properly submitted the question
of defendant's negligence and decedent's contributory negligence under
all the evidence to the jury.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and Mc-
COLLUM, JJ.

No. 313 January Term, 1889, Sup. Ct.; court below, No. 26
September Term 1888, C. P.

On June 30, 1888, Jennie Zink brought trespass against the
Pennsylvania Railroad Company, to recover damages for negli-
gence resulting in the death of her husband, William H. Zink.
Issue.

At the trial on December 17, 1888, the case shown presented the following facts :

William H. Zink, the decedent, was and had been for several years prior to his death in the employ of the Pennsylvania Railroad Company, and in its yards at Altoona, Pa., as a brakeman, one of a yard or shifting crew. On August 19, 1887, between 3 P. M. and 4 P. M., he was engaged in shifting five gondola or platform cars loaded with oak lumber, an engine being at the rear of the cars pushing them. The lumber was piled on the cars to a height of four or five feet above the bottom of the car. The conductor of the shifting train left it to set some switches, and directed Zink to run the cars up to some other cars to which they were to be coupled. The other cars referred to were standing on a siding or tail track, in that part of the yard used by the company as a lumber yard, at a distance of about three hundred yards, and these five lumber cars of the train were to be attached to them and left there to be used in connection with the company's planing mill near at hand. The journey Zink was directed to make was over this siding, which was straight and up grade. As the train moved off Zink stepped into the iron stirrup at the right hand side of the front end of the front car, and remained in this position with his left foot in the stirrup, his right foot resting on the bumper, and one of his arms over the side of the box of the car to hold himself on. On the right hand side of this siding, at a point about 20 feet from where Zink took charge of the train, there commenced a series of board piles, quite close together, five feet high, and distant four and one half feet from the track, and at a distance from the side of the car on which Zink rode variously estimated at from 20 to 40 inches. Zink was looking in the direction the train was going, and must have known of the position of these board piles from a daily using the track. The train was running at a speed of 5 or 6 miles an hour. When the car on which Zink was riding had passed one or two of these board piles, it became derailed, and the front end veering to the right, Zink was caught between the board pile and the car ; and after having been turned around several times between them, was released at the end of the board pile, injured to such an extent that he died shortly afterwards. The front end of the car did not strike the board piles, and the lumber on the

car did not extend over the front end or bumper of the car. There was some evidence that Zink could not apply the brake, nor signal the engineer from where he was riding.

The cause of the derailment of the car was controverted. The plaintiff claimed and produced a number of witnesses to prove that it was due to the spreading of the rails, and the spreading of the rails was due to the ties being rotten. The defendant claimed it was due to a piece of wood lying on the left hand rail, which threw the weight of the car against a joint in the right hand rails, causing the joint to twist and the flange of the right front wheel of the front car to jump the rail.

The court, FURST, P. J., after referring to the facts in evidence charged the jury, in part as follows:

The four cars that were being pushed by the locomotive, loaded with lumber, were what are called platform or gondola cars. [Mr. Zink's position, according to the witnesses' testimony on the part of the plaintiff, was on the front car; because the duty assigned him was that of coupling the car, standing on the track, with these cars, and that car as well as the others was loaded with lumber. Just how it was loaded you must determine from the evidence, if it becomes material in the consideration of the facts that we will submit to you.] [6] He went up on the right hand side of this train, and at the front car at what may be termed its northwest corner, he stepped with his left foot on the stirrup of the car, he rested his right foot on the bumper, and with his left arm he held himself in position upon the car. You will recollect from the testimony, just the position he is described to have been in at the time. Before reaching the car to which he was to couple, the accident occurred, and the car that he was on was derailed, or thrown from the track, and Mr. Zink was killed. There is but one witness who testifies to the exact circumstances of his death; he says he was shoved in between this car, which when it was derailed deflected to the right; that he was shoved between that car and a pile of boards standing on the right hand side of the track. [You will notice this pile of boards on the diagram is marked as being four and one half feet from the track; how far the car extended out over the track you must determine from the evidence, in order to ascertain the

distance or space between the loaded car and the pile of lumber that was there.] [7] [The evidence on the part of the plaintiff further shows that these railroad ties upon which the irons of the road were placed, were rotten, or at least some of them were rotten, and that they were old and defective; that the spikes did not hold in the wood; that the track yielded from the pressure of the car upon it, and spread out. Other witnesses testified that at the joint, where the two rails meet, the western rail had been separated from the other, and extended south a part of its way, and that the flange of the wheel passing over this point, raised upon the iron of the road and ran along a foot or so and then ran off the track. It is alleged that the piece upon which that joint rested was defective and that the spikes did not hold the rails, and that they separated and caused the car to leave the track.] [8]

[Then stating at length the law applicable to the case, the court continued:]

This, therefore, defines the relative duties of the defendant, the employer, and the employee, Mr. Zink. On the one hand, the railroad company is to furnish appliances which are reasonably safe for the protection of the employee; not, that are absolutely safe, because this may not be obtained by any one, but that are reasonably safe for the purposes intended. The employee of the railroad company in entering upon his employment, assumes certain risks upon himself, for which there can be no liability upon the part of the company. Risks that a brakeman assumes in entering upon the duties of a brakeman, are such risks as are usual and incident to his employment. So that you may understand the distinction, I will illustrate by saying, that if Mr. Zink had lost his life in attempting to couple the cars together, he could not have recovered in this case, because that was a risk which he assumed when he entered the employment of the company as a brakeman; [but if through the negligence of the company the car upon which he was riding was derailed, through no negligence on his part, then he might recover, because that would not be a risk incident to his employment.] [9]

\* \* \* \* \* \* \* \*

The court is respectfully asked by the defendant to instruct the jury as follows:

Charge of Court below.

1. That the plaintiff having alleged that the north rail had spread three fourths of an inch, previous to the time of the accident, and the plaintiff's testimony showing that the decedent was over that part of the track daily in the course of his employment as brakeman, and that he had equal means of knowledge of the condition of the track with respect to the said spreading of the rails, with the defendant, and having continued to use the track without notice to the defendant of its alleged defect, the defendant company is not responsible.

Answer: We cannot affirm this point, as it requires the court to find the facts and decide the case. We think the case presents facts which must be referred to the jury.[1]

2. That the weight of the evidence shows that the defendant company was guilty of no negligence, or at most, a scintilla only.

Answer: This is a question of fact for the jury and not for the court.[2]

3. That the alleged defects in the track have not been shown to have been the proximate cause of brakeman Zink's death, and that therefore there can be no recovery.

Answer: We decline to affirm this point, as it presents a question of fact for the jury.[3]

4. That the undisputed testimony in the case shows contributory negligence on the part of the deceased which precludes recovery.

Answer: We decline to affirm this point, but refer the fact to the jury.[4]

5. That under all the testimony in the case it is the duty of the court to give you binding instructions to find for the defendant.

Answer: This point we refuse.[5]

The jury returned a verdict for the plaintiff for $5,676.48. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this writ assigning as error:

1–5. The answers to defendant's points.[1 to 5]

6–9. The portions of the charge embraced in [ ] [6 to 9]

10. That the court erred in not calling the attention of the jury to the fact of Zink's previous knowledge of the proximity of the board piles to the right hand side of the track.

*Mr. J. D. Dorris* (with him *Mr. W. Dorris*) for the plaintiff in error.

*Mr. Geo. B. Orlady*, for the defendant in error.

PER CURIAM:

The first five assignments allege error in the answer to defendant's points. They were all refused by the learned judge below, for the reason that their affirmance would have withdrawn the case from the jury. This the court could not properly have done. They were all questions which were for the jury. We do not think the position of brakeman Zink on the car at the time of the accident shows contributory negligence on his part; at least we cannot declare it so, as a question of law; it was for the jury. He was riding as he had often done before; as he had seen others do repeatedly; there was abundant room between him and the lumber piles, and he had no reason to suppose, he certainly was not bound to anticipate, that the car would become derailed just at that point, and that as the result thereof he would be crushed and killed between the car and the pile of lumber. Nor do we think he was bound to know the unsafe condition of the track. It was not in the line of his duty to see to the track, nor was the defect so palpable that it must have been seen and known by him, as was the bridge in Mansfield Coal and Coke Company v. McEnery, 91 Pa. 185. The remaining assignments refer to the charge of the court, and are without merit.

Judgment affirmed.