## Tomlinson et al. *v.* Northwestern Electric Co., Appellant.

Argued May 12, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*John B. Brooks,* with him *Alban W. Curtze,* for appellant.—The question of negligence and contributory negligence is for the jury: Yingst v. Ry., 167 Pa. 438; Baltimore & Ohio R. R. v. Goodman, 275 U. S. 66; Smith v. Transit Co., 296 Pa. 212; Walker v. T. & L. Co., 95 Pa. Superior Ct. 461; Smathers v. Ry., 226 Pa. 212.

The wife of the driver, sitting in the front seat of the car, was guilty of contributory negligence: Dunlap v. Transit Co., 248 Pa. 130; Hill v. Transit Co., 271 Pa. 232; Morningstar v. R. R., 290 Pa. 14; Kirschbaum v. Transit Co., 73 Pa. Superior Ct. 536.

The evidence did not justify allowing the jury to assess any damages on account of the death of Blanche L. Tomlinson nor any damages which the sons would sustain by reason of the death of William A. Tomlinson and Blanche L. Tomlinson, or both, after the sons ar-

rived at the age of twenty-one years: Mansfield C. & C. Co. v. McEnery, 91 Pa. 185; Schnatz v. R. R., 160 Pa. 602.

A verdict which does not disclose whether the jury assessed damages for the death of two persons or for one, and if for one the verdict would be grossly excessive, should not be allowed to stand.

Separate verdicts should have been directed for each of the plaintiffs: Azinger v. R. R., 262 Pa. 242.

*J. Orin Wait,* of *Reed, Wait & Spofford,* with him *Shoemaker & Knoell,* for appellees.—The evidence of defendants negligence is positive, conclusive and uncontradicted: Kuhns v. Traction Co., 290 Pa. 303; Schultz v. Traction Co., 65 Pa. Superior Ct. 527; King v. Ry., 242 Pa. 497.

Neither Mr. Tomlinson, the driver, nor Mrs. Tomlinson, a passenger in the automobile, was guilty of contributory negligence: Keck v. R. R., 271 Pa. 479; Lerch v. Transit Co., 255 Pa. 190; Frank v. Ry., 297 Pa. 233; Thomas v. R. R., 275 Pa. 579; Minnich v. Traction Co., 267 Pa. 200.

The verdict of the jury is fully justified by the uncontradicted evidence and might very properly have been for a larger amount: P. R. R. v. Goodman, 62 Pa. 329; McArdle v. Rys., 41 Pa. Superior Ct. 162; Stahler v. R. R., 199 Pa. 383; Potts v. Guthrie, 282 Pa. 200.

Separate verdicts are not permitted in cases of this kind in Pennsylvania: Schlossstein v. Bernstein, 293 Pa. 245; Azinger v. R. R., 262 Pa. 242; Fields v. Transit Co., 273 Pa. 282; Lengle v. Twp., 274 Pa. 51; Keck v. Ry., 271 Pa. 479; Lewis v. Turnpike Co., 203 Pa. 511; Miller v. R. R., 256 Pa. 142.

OPINION BY MR. JUSTICE SADLER, June 21, 1930:

This action was brought by the guardian of William L. and Joseph H. Tomlinson to recover damages resulting from the death of both of their parents. At the time

of the accident, the first named was 19, but became of age prior to the trial and was added as a plaintiff. The two sons, at the time, resided at home, though the older attended the Carnegie Technical Institute in Pittsburgh, and there remained until the June following, when he accepted his present position with the Pittsburgh Plate Glass Company in Detroit. The younger was seventeen, and remained at the family house until its closing, one month after the parent's death. He entered Pennsylvania State College on September 17, 1928, and was still a student there when the present trial took place.

The family resided in a house west of the road leading from Venango to Cambridge Springs, but for a part of the year occupied a cottage near French Creek on the opposite side of the tracks of defendant, which operated an electric railway running parallel to the public highway, and crossed, practically at right angles, a rough private way at grade leading to the summer house of plaintiffs. Where the trolley line passes over the road, used by the few residents to the east, a waiting room was built at which cars stopped on signal. The view to the south, in the direction from which the car approached, was obstructed by a growth of trees and underbrush extending to within two or three feet of the tracks. At the actual point of intersection, a view of an approaching car could be had for a distance of 150 feet or more, if we assume the truth of the evidence of claimants' witnesses, which must be done since a verdict was rendered for plaintiffs.

On August 9, 1927, about noon, the deceased turned from the public road onto the private driveway at a point about 39 feet from the crossing. They stopped there to open a mail box, and then proceeded to the east. Whether they looked and listened, or failed to stop when becoming aware of danger, as was their duty (Keck v. Ry. Co., 271 Pa. 479; Talley v. Chester Traction Co., 227 Pa. 393), before entering upon the rails, does not appear from any direct testimony, yet, both of the par-

ents having been killed, it is to be presumed that they exercised due care before driving their car onto the tracks: Frank v. Reading Co., 297 Pa. 233. That their view was obstructed, until the front of the automobile had entered upon the first rail, is established by the testimony. The trolley, coming from the south, gave the customary signal by whistling about 800 feet before reaching the crossing, and its approach must have been accompanied with the usual noise occasioned by the movement of the car, traveling at from 30 to 35 miles an hour. A private road, 600 feet to the south, was passed before it reached the driveway, over which the automobile traveled. According to the testimony, undisputed as far as the record shows, the trolley was properly equipped, being supplied with automatic brakes, which the motorman claims he applied when 30 yards from the intersection, the point at which he first observed the motor, then three feet from the western rail. The testimony showed that, even with the use of the ordinary appliances supplied, he could not stop in less than 325 feet when traveling at the speed indicated.

The automobile moved onto the track, the front passing over the west to the east rail. It was struck at the rear of the driver's seat and carried to the north 100 feet, if the testimony of plaintiffs is to be believed, though the motorman fixed the distance at slightly less. Both of the Tomlinsons were killed. No one saw the collision except the motorman and four passengers in the car, who first observed them when 60 feet from the crossing. In addition to the evidence that a whistle was blown 800 feet to the south, and that the car was noisy, as detailed by a witness who resided 250 feet west of the public road, and who heard it pass at the time of the accident, there was a statement, though denied, that the deceased father, on the way to the hospital, admitted that he heard a whistle. The case was submitted to the jury on the testimony set forth, with adequate instructions as to its duty in passing upon the question of neg-

ligence and contributory negligence. On the verdict rendered for plaintiffs, judgment was entered, from which defendant appeals.

The collision took place at a private road, and the motorman was not bound to exercise the same high degree of diligence in signalling and limiting the speed as at a public crossing. But the duty of care does not rest wholly upon a person using the accustomed driveway, and the employees of the railway company were bound to exercise caution commensurate with the danger of the particular situation: King v. Ry. Co., 242 Pa. 497. In the instant case, the surroundings called for great watchfulness by both the owner of the automobile and the motorman. The former could not see to the south until the front of his car had passed the first rail, though it was possible for him to stop, if warned of danger, descend from his car, go forward and make the necessary observation. Because of his death, and in the absence of evidence to the contrary, a presumption, though rebuttable, arises that he did use due diligence. Even though the passengers upon the trolley observed the front of the automobile west of the first rail when the former was 60 feet away, this is not sufficient to negative the idea that precaution was taken, for the decedent may have descended from his motor, looked to the south, and then returned to his car before attempting to cross. The motorman knew of the used private road, that a view of a vehicle approaching thereon from the west was obstructed, and was bound to have his car under reasonable control, particularly in view of the fact that he was approaching a station where it was necessary to stop on signal for those desiring to enter. Instead, he moved forward at from 30 to 35 miles an hour, a speed which made impossible the bringing of the car to a standstill within less than 325 feet, even though the emergency brakes were used. Running the trolley at the rate fixed, and under such circumstances, is evidence of negligence. It was the duty of the motorman

to have it under such control, where a known dangerous highway is about to be passed over, as to prevent a collision such as here occurred: Kuhns v. Conestoga Traction Co., 290 Pa. 303. The automobile was not hit as it first entered upon the track, but had completed one-half the distance necessary to effect a clearance before being struck.

In view of the death of the occupants of the car, and the presumption which follows that due care was taken in making observation before the crossing was attempted, which had been nearly accomplished before the accident happened, it could not be said, as a matter of law, that the driver was guilty of contributory negligence. Though a witness testified as to an admission of Tomlinson that he heard the whistle,—a statement contradicted by other evidence,—yet, even if so, this oral declaration was for the consideration of the jury. In addition to the assumption that the deceased took necessary precautions, there is proof that he stopped at the mail box, 39 feet to the west, the usual place for people to come to a standstill before approaching the tracks on the driveway in question, as the intervening space was so grown up with trees and underbrush as to make impossible a view to the south at a nearer point. As the question of contributory negligence of the driver could not be disposed of as a matter of law, it is unnecessary to determine whether his lack of due care is to be imputed to the wife, who was also killed. Whether the husband failed to exercise proper caution, in which act the wife joined, was a question for the jury, to whom it was properly submitted.

It is urged by defendant that the rights of action of the two children were separate and distinct, and the suit was improperly brought by the guardian on behalf of both. One became of age after the bringing of it and was later joined as a party plaintiff. The contention is made that a joint verdict for the two sons cannot be sustained under such circumstances. Where death oc-

curs from the negligent act of another, the right to institute the proceeding has been regulated by statute. The Act of April 15, 1851 (P. L. 674), provided that, if not brought by the decedent during his lifetime, the action should be by the widow, or, if none, his personal representative. This legislation was subsequently altered by the Act of April 26, 1855 (P. L. 309), which directs, in its first section, that "the persons entitled to recover damages for any injury causing death, shall be the husband, widow, children or parents of the deceased." The effect of this statute was to deprive the personal representative of the right of action in such cases and to vest it in the parties designated.

If there is a husband or widow and children surviving, the action must be in the name of the parent alone, and the children are not properly joined as plaintiffs, though entitled to share in the sum recovered in the proportions fixed by the intestate laws: Haughey v. Pittsburgh Rys. Co. (No. 2), 210 Pa. 367. If, as in this case, both father and mother were killed, then the suit is to be instituted in the name of the children jointly, though one or more reside elsewhere than in the parental home, and all may join in one proceeding: Schnatz v. P. & R. R. R. Co., 160 Pa. 602; Lewis v. Hunlock's Creek Turnpike Co., 203 Pa. 511; Miller v. P. R. R. Co., 256 Pa. 142; North Penna. R. R. Co. v. Robinson, 44 Pa. 175. A general verdict is to be returned under such circumstances and not one for each of the children entitled to recover: Lengle v. North Lebanon Twp., 274 Pa. 51.

The serious question involved in this appeal arises from the instructions as to the amount recoverable. Section 2 of the Act of April 4, 1868, P. L. 58, provides that, where injury occurs from the negligent act of a common carrier, "only such compensation for loss and damage shall be recovered as the evidence shall clearly prove to have been pecuniarily suffered or sustained." The children are entitled to substantial damages measured by the pecuniary advantage which they would receive had

the parents survived: Schnatz v. P. & R. R. R. Co., su-
pra. The measure is not based on the probable earnings
of the deceased, but what the evidence showed they
could reasonably expect would be given in the future for
their support: Irwin v. P. R. R. Co., 226 Pa. 156; P.
R. R. Co. v. Butler, 57 Pa. 335. The rule generally fol-
lowed is that stated in Mansfield Coal Co. v. McEnery,
91 Pa. 185, and limits the amount to reasonable expecta-
tion of family aid. The two sons were entitled to com-
pensation which they could fairly anticipate would be
furnished, but the burden was upon them to show suffi-
cient facts from which its extent could be determined,
as the question is not merely one for speculation by the
jury.

Here, the guardian expended, until the completion,
in June, 1928, of the education of William at the Car-
negie Institute, $1,500, and thereafter he became an em-
ployee of the Pittsburgh Glass Company at Detroit.
Joseph lived at home on August 9, 1927, when the acci-
dent occurred, and was then 17. No evidence was given
as to the expenditure on his behalf until he entered
Pennsylvania State College on September 17, 1928, un-
less it be inferred from the monthly allowance of $30
made to an aunt for his support during the summer
thereafter. While in attendance at the institution
named an outlay of $1,220 was required for each year,
which included expenses during vacation periods, and
like provision will doubtless be required until he be-
comes of age in 1931, a total of about $4,000.

The learned court, in its charge, properly called the
attention of the jury to the earning capacity of the fa-
ther, the manner of living of the parents, and the sums
actually expended, or required, until the sons reached
their majority. It also stated that damages did not
necessarily cease upon their arriving at the age of ma-
turity and becoming self-supporting. In such cases, the
amount of the loss is necessarily one incapable of ac-
curate proof, but there should be some testimony from

which the jury could fairly gauge the financial assistance which the children would receive in the future. The record here presented is however silent as to the extent of further pecuniary aid reasonably to be expected, except as could be inferred from proof of the income of the parent, and the friendly family relations existing. "It is not the total earnings of the father which measures the pecuniary interest of the son in his life, but the likely amount which he would have contributed towards the support and maintenance of the child": Milyak v. Phila. Rural Transit Co., 300 Pa. 457.

It was the duty of the court to instruct the jury that their verdict must be limited to the actual financial assistance which, under the circumstances, they had reason to anticipate, even though the request was not specially made. In view of the evidence submitted, a judgment for $20,030 cannot be considered other than excessive, unjustified by any proof offered. Though verdicts will only be set aside by us in such cases where so large as to indicate the jury abused its powers, and the trial court has failed to correct the error (Goldman v. Mitchell-Fletcher Co., 285 Pa. 116), yet, where it is apparent the jury was not properly cautioned as to matters to be considered, and the conclusion is apparently based on mere speculation, a new venire will be granted: Milyak v. Phila. Rural Transit Co., supra. The record should therefore be returned for a new trial, when the jury can be given more explicit directions as to the sums justifiably recoverable under the testimony presented.

The judgment is reversed with a venire facias de novo.