Alio et al. *v.* Pennsylvania Railroad Company.

Argued March 23, 1933. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Raymond E. Brown,* with him *Matthew A. Crawford,*
for appellant.—Decedent must have seen and heard the
approach of the train, and should have warned the driver
of the danger: Haskins v. R. R., 293 Pa. 537; Joseph v.
Ry., 294 Pa. 315; Rhodes v. R. R., 298 Pa. 101; Miller
v. R. R., 299 Pa. 63; Kolich v. Ry., 303 Pa. 463; Haller
v. R. R., 306 Pa. 98; McCartney v. R. R., 307 Pa. 226;
Hawk v. R. R., 307 Pa. 214.

The measure is not based on the probable earnings of
the deceased, but what the evidence showed they could
reasonably expect would be given in the future for their
support: Irwin v. P. R. R. Co., 226 Pa. 156; P. R. R.
Co. v. Butler, 57 Pa. 335.

*Charles J. Margiotti,* with him *Edward Friedman* and
*Joseph P. Bonidy,* for appellees.—The passenger must
exercise reasonable prudence for his own safety but not

so high a degree of care as is required of the driver: Azinger v. P. R. R. Co., 262 Pa. 242.

The extent to which one in the position of a guest should appreciate an impending peril and act in relation thereto, depends upon the facts and unless they are manifest and the inferences clear beyond peradventure, the issues must be submitted to the jury: Minnich v. Transit Co., 267 Pa. 200.

The physical facts rule has no application to the case at bar. In all the cases where this rule was applied it was a clear day with an unobstructed view of the tracks for hundreds of feet.

Damages did not necessarily cease upon the children arriving at the age of maturity and becoming self-supporting: Gaydos v. Domabyl, 301 Pa. 523; Tomlinson v. Electric Co., 301 Pa. 72.

The Supreme Court will exercise the power conferred upon it to reverse on the ground of an excessive verdict only in extreme cases, and not when the verdict merely approaches the verge of excessiveness: Stevenson v. Ebervale Coal Co., 203 Pa. 316; Martin v. Letter, 282 Pa. 286; Parkin v. Transit Co., 300 Pa. 569; Sullivan v. R. R., 272 Pa. 429.

OPINION BY MR. JUSTICE DREW, April 10, 1933:

Plaintiffs, by their uncle as next friend, brought this action to recover damages for the death of their father in a collision between the automobile in which he was riding as a guest and a freight train of defendant. There was a verdict for plaintiffs in the sum of $30,455. From the judgment entered on the verdict defendant appealed, assigning as error the refusal of its motions for judgment n. o. v. and a new trial.

The collision took place between 4: 30 and 5 o'clock on Christmas morning, 1930, at the Nineteenth Street crossing of defendant's tracks in the Borough of Arnold, Westmoreland County. Decedent, his wife (who also was killed), and her sister, Helen Marine, were being

taken to church by Frank Tigano, a friend, in the latter's car. Decedent was beside the driver on the front seat, and the two women were on the back seat. Tigano and Helen Marine, called by plaintiffs, testified that as the car approached the crossing, which consisted of four tracks, decedent said to Tigano, "Frank, be careful for the crossing, stop." Tigano brought the car to a full stop at the customary stopping place, about 50 feet from the northbound track. It was dark, and there was a dense fog. The view along the tracks was only ten or fifteen feet. With the aid of the lights of the car, Tigano could see that the crossing in front of him was clear, but he could not see beyond the last track. After stopping, he stated, he looked in both directions and, with his head through the open window beside him, listened for seven or eight seconds. The window beside decedent was halfway open, and, it was testified, he looked and listened. Hearing no train, Tigano said, he put the car in low gear and started across, at a speed of about three or four miles an hour, continuing to look and listen. After the car had crossed three tracks, and when it was about halfway over the fourth and last track, it was struck by defendant's northbound train, consisting of a locomotive and 73 cars, which approached from the right at a speed of 40 or 45 miles an hour. The automobile was caught on the front of the engine and completely demolished, the occupants were thrown out, and plaintiffs' parents were killed.

Tigano and Helen Marine further testified that they were familiar with the crossing and listened for the automatic crossing signal, a bell, but that it was not ringing, and also that the locomotive sounded neither whistle nor bell as it approached the crossing. In these matters they were corroborated by a number of witnesses. While the testimony of plaintiffs' witnesses was strongly contradicted by defendant's witnesses, defendant concedes that the evidence presented by plaintiffs

was sufficient to support a finding of negligence on its part.

Defendant earnestly contends, however, that decedent was guilty of contributory negligence as a matter of law —that inasmuch as the car was struck only 50 feet from where it had stopped, decedent must have seen and heard the approach of the train, had he been reasonably attentive, and under the circumstances should have warned the driver of the imminent danger. We may dismiss at once its claim that he was negligent in not seeing the approaching train when he looked at the time the car was stopped. The testimony for plaintiffs that the night was dark and foggy and vision limited to ten or fifteen feet was sufficient to take the case to the jury on this point, even though it was opposed by the testimony presented by defendant. The situation was not in the least like that in McCartney v. P. R. R. Co., 307 Pa. 226; Hower v. P. R. R. Co., 308 Pa. 246, and Minella v. P. R. R. Co. (No. 1), 309 Pa. 479, where smoke from a source near the crossing temporarily obscured the view. To stop and wait for the fog to clear was out of the question. In such a dense fog, it was obviously impossible for decedent to see a train which, in view of the relative speeds of the locomotive and automobile, must have been more than 500 feet away when he looked at the time the car was stopped.

No more meritorious is defendant's claim that had decedent listened, he must have heard the sound of the approaching train, and that therefore his failure to warn Tigano constituted negligence. Decedent was not the driver of the car, but only a guest. If Tigano was negligent, it is well settled that his negligence is not to be imputed to his guest: Minnich v. Easton Transit Co., 267 Pa. 200; Davis v. Am. Ice Co., 285 Pa. 177; Brown v. Reading Co., 310 Pa. 516. And, under the facts of the instant case, it cannot be said as a matter of law that decedent himself was negligent. As a guest in the automobile, he was not bound to the same degree of care as

the driver: Azinger v. P. R. R. Co., 262 Pa. 242; Nutt v. P. R. R. Co., 281 Pa. 372; Cormican v. Menke, 306 Pa. 156. He had warned Tigano to stop, and the latter had stopped, looked, and listened. He had looked and listened himself, and there is nothing in the case to show that he did not continue to do so while crossing the tracks. The facts of this case are such that when once the automobile was committed to the crossing, it would not be negligence for the driver to keep on going if he heard a train approaching, this because of the fact that he could not see it or tell upon which track it was running. Under these circumstances, the danger was equally great whether he went on or stopped. It follows that it was not negligence for decedent to fail to warn the driver, even if he did hear the train approaching, since such warning could do no good. We are satisfied that it would have been error to grant the motion for judgment n. o. v.

Defendant contends, in support of its motion for a new trial, that the verdict is excessive. This contention, we believe, is well founded. Decedent was almost 29 years of age when he was killed, and his son and daughter, the plaintiffs, were six and seven years of age, respectively. Decedent had been employed as a laborer by the United States Aluminum Company for four or five years, and his earnings had averaged slightly more than $1,500 a year during the three years preceding his death. The work was not hazardous, and decedent, who was a man of steady habits, enjoyed good health. His family consisted of his wife and two children, whom he supported. Since it appeared that the funeral expenses were $455, it is reasonable to assume that the jury intended that $30,000 of their verdict should go to plaintiffs to compensate them for the loss of their father. Such a sum at legal interest would give the two children $1,800 a year as long as they lived, and leave the principal of $30,000 intact for such disposition as they saw fit. The interest alone would exceed by $170.87 the most

that decedent earned in any of the three years which preceded his death. These considerations make it obvious that the verdict was excessive.

The principles to be followed in cases of this nature are well stated in Tomlinson v. N. W. Electric Co., 301 Pa. 72, 80, where the action was likewise brought by two minor children: "The children are entitled to substantial damages measured by the pecuniary advantage which they would receive had the parents survived: Schnatz v. P. & R. R. R. Co., 160 Pa. 602. The measure is not based on the probable earnings of the deceased, but what the evidence showed they could reasonably expect would be given in the future for their support: Irwin v. P. R. R. Co., 226 Pa. 156; P. R. R. Co. v. Butler, 57 Pa. 335. The rule generally followed is that stated in Mansfield Coal Co. v. McEnery, 91 Pa. 185, and limits the amount to reasonable expectation of family aid." As stated in Milyak v. Phila. Rural T. Co., 300 Pa. 457, 463, "It is not the total earnings of the father which measure the pecuniary interest of the son in his life, but the likely amount which he would have contributed toward the support and maintenance of the child; and not even this sum multiplied by the number of years of the expected support, but the present worth of such sum: Glasco v. Green, 273 Pa. 353."

Plaintiffs were entitled only to the present worth of such sums as they might reasonably have expected from their father for support and maintenance. Assuming that plaintiffs would receive the support to which they were entitled until they became of age, the verdict was clearly excessive. It is not likely that decedent would have contributed more than one-third of his earnings to his children's support, and in that event they would have received from him only $500 a year. It must not be overlooked that in addition to his children he had himself and his wife to support. We think that $12,000 is the largest sum which can be supported as not excessive. To this, of course, the funeral expenses should be added.

The judgment of the court below is vacated and set aside, the rule for a new trial is reinstated, and the record is remitted with directions that the court below make an order that if plaintiffs, within such time as it shall prescribe, shall remit all of the verdict over the sum of $12,455, judgment will be entered in their favor for that amount, otherwise the rule for a new trial will be made absolute.