## McAlister, Admr., v. Stevens

*McAlister & Zelt*, for petitioner.
*Bloom & Bloom*, for distributees.

GIBSON, J., March 8, 1941.—This case comes before us on a hearing for distribution of funds in the hands of the administrator which arose by reason of the wrongful death of Frank Turosik. From the records and the evidence taken at the hearing, we find the following facts:

1. On August 12, 1940, Frank Turosik died from injuries received as a result of the negligent acts of William L. Stevens.

2. Subsequently, letters of administration were granted by the Register of Wills of Washington County, Pa., to David I. McAlister.

3. David I. McAlister, as administrator, under Pa. R. C. P. 2202, entered suit against William L. Stevens on September 16, 1940, which was subsequently compro-

mised with the approval of the court for the sum of $5,000, with the further provision that defendant should pay the expenses of administration, including the services of the administrator and his counsel, so that the sum of $5,000 was net to the administrator for distribution among the persons entitled thereto.

4. The administrator filed his petition praying for distribution, upon which an order was made fixing a time for hearing, and a hearing has been held, at which were present the widow and the two sons hereinafter referred to.

5. At the time of his death Frank Turosik left to survive him a widow, Christina Turosik, and three children, Julia, Rudolph, and Mike.

6. Julia, the daughter, was married in Czechoslovakia when her parents left there. They had left that country about sixteen years ago, leaving her living there at that time with her husband. There had been no family relation between her and her father during those 16 years in the sense that he contributed anything to her. She had last been heard from about four year ago, and at the time of the hearing was of the age of about thirty-two years.

7. Rudolph at the time of the hearing was aged 31 years, had been married for about nine years and lived with his wife and five children separate and apart from the home of Frank Turosik during that time, and no family relation existed between them in the sense that Frank Turosik contributed anything for him or his family.

8. Mike, the youngest child, was 14 years of age on November 22, 1940, and lived with and was a member of his father's family and was kept and maintained by his parents in their home.

9. The widow, Christina Turosik, lived with her husband as a member of his household and was maintained by him.

10. The Citizens National Bank of Washington, Pa., was appointed guardian of Mike Turosik, the minor, by

the Orphans' Court of Washington County, Pa., at no. 51, November term, 1940.

11. The widow, Christina Turosik, paid the funeral bills of Frank Turosik and the expenses incident to his burial as follows:

Bill of Andrew J. Skirpan, funeral expenses, $385.00
Bill of Father Yesko, for his services in burial    100.00

$485.00

12. Bloom & Bloom, Esqs., represented the widow and the minor in pressing their claim for damages against William L. Stevens, and claim the sum of $250 from the minor's share for such services.

### Discussion

The widow, having paid the funeral expenses, should be refunded that amount. The court has authority under Pa. R. C. P. 2206(c) to fix the counsel fees and proper expenses out of the share of damages to which the minor is entitled. Under clause (b) of the same rule, the court is required to make an order designating the persons entitled to share in the damages recovered and the proportionate share of the net proceeds to which each is entitled, and the person to whom the minor's share shall be paid. After deducting the funeral expenses, the proper distribution is the only question involved.

The Act of April 15, 1851, P. L. 669, as amended by the Act of April 26, 1855, P. L. 309, again amended by the Act of June 7, 1911, P. L. 678, and finally amended by the Act of April 1, 1937, P. L. 196, provides:

". . . the persons entitled to recover damages for any injuries causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives; . . . and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy, and that without liability to creditors under the laws of this Commonwealth."

The provisions of this act have been before the courts many times. There has been a general line of decisions holding that the recovery is limited to certain designated persons by reason of loss suffered by such persons, but the decisions have not always been in accord in determining how distribution of the fund shall be made. While the general purpose is to allow a recovery for the total loss of each beneficiary who has suffered loss, the distribution has sometimes apparently been made to those of a class who suffered no loss, to the injustice and hardship of those who were entitled to recover damages. There also appears to have been confusion in the distinction between the right to bring suit and the right to participate in the amount recovered.

It must be borne in mind, as has frequently been stated, that at common law no right to recover for the wrongful death of a near relative existed. Such right is conferred by statute and the courts are bound by the statutory law covered by the four acts referred to. The rights under these acts to recover for wrongful death have been extensively discussed in Gaydos et al. v. Domabyl, 301 Pa. 523, and the cases there cited. This authority lays down certain general principles which are applicable, except as they have been changed by the Pennsylvania Rules of Civil Procedure. Among them are the following:

". . . 'parents' and 'children' were words used to show an intention of indicating a family relation in point of fact as the foundation of the right of action, . . .

"Family relation . . . exists between parent and child when a child receives from a parent services or maintenance or gifts with such reasonable frequency as to lead to an expectation of future enjoyment of these services, maintenance, or gifts. [It] . . . is confined to certain phases of family relation between the persons named in the act. . . . [The parties] need not reside . . . under the same roof . . . Before there can be recovery in damages by one in that relation . . . there must be a pecuniary loss, . . . a destruction of a reasonable expecta-

tion of pecuniary advantage from the deceased . . . grounded on reasonably continuous past acts or conduct of the deceased.

". . . pecuniary loss embraces the present worth of deceased's probable earnings during the probable duration of deceased's life, which would have gone for the benefit of the children . . . or wife.

"Damages are never presumed, the burden of showing facts which would bring any claimant into the class within the rule that entitles him to recover under the act rests on the one asserting the claim."

What a person would have inherited by the death of another or his continued life after such time, either by accretion of property or life insurance, is not proper for consideration: Stahler v. Philadelphia & Reading Railway Co., 199 Pa. 383.

In the consideration of that portion of the act relating to distribution, viz: ". . . the sum recovered shall go to *them* in the proportion they would take his or her personal estate in case of intestacy", there appears to have been confusion in the early cases. The distribution of personal estate under the intestate laws would be one third to the widow and two thirds to the children as a class. Is that what is intended by the act, or should the word "them" refer to, and only to, those who had suffered a loss? And in lieu of the word "them", should there be read into the act the words "those suffering loss"?

In The North Pennsylvania Railroad Co. v. Robinson et al., 44 Pa. 175, the court, in speaking of the law, says (p. 179) :

"It treats of the value of the life lost as a species of property, and gives it, where children sue, to them in the same proportions as the personal estate of an intestate is distributed. This is what the act says and means, and hence the propriety of joining all the children as plaintiffs." Again (p. 178) :

"The recovery is for the benefit of all the children, for the statute provides that the money so recovered shall be

distributed in the same proportion amongst them, as in the case of the estate of an intestate. . . . The law gives it to them all in equal proportions, and if we are careful to remember that the value of the life lost, to be estimated by a pecuniary standard, is what is to be recovered for, we shall fall into no such error as in supposing that none but those who can show some actual damage, are entitled to recover."

In Lehigh Iron Company v. Rupp, 100 Pa. 95, where there was a widow but no children, it was held that she was entitled to recover in case of her husband's death to the exclusion of his parents, notwithstanding the son was not yet of age. And this appears to depart from the theory of the value of a life lost, and to base the loss and right to recover on the family relation and loss of anticipated benefits.

In Allison et al. v. Powers, 179 Pa. 531, the court recognized that the widow was the only one who could bring suit under the acts then in force, but where she recovered damages for the death of the husband the children of the deceased were entitled to share as in case of intestacy. In this case all five children maintained the family relation at the time of the death, although but two of them brought the suit, and distribution was ordered one third to the widow and one fifth of two thirds to each of the parties bringing the suit.

The courts appear to have clearly by this time definitely and positively arrived at the basis of damages as that which the particular person who maintained the family relation to the decedent lost by reason of the decedent's unlawful death, viz, that loss of reasonable expectation of pecuniary advantage; and this position is pursued, including Burns v. Pennsylvania R. R. Co., 219 Pa. 225, Milyak, Admr., v. Philadelphia Rural Transit Co., 300 Pa. 457, Gaydos et al. v. Domabyl, 301 Pa. 523, Alio et al. v. Pennsylvania R. R. Co., 312 Pa. 453, Kaczorowski v. Kalkosinski, Admr., 321 Pa. 438, McFadden v. May, 325 Pa. 145, and Minkin et al. v. Minkin, 336 Pa. 49.

The basis of recovery in this action is now well defined. By reason of the wording in the act, a doubt appears to exist regarding the proper distribution of that recovery. This arises by reason of The North Pennsylvania R. R. Co. v. Robinson, supra, and the indefiniteness of some decisions following, and an expression used in Gaydos et al. v. Domabyl, supra, page 532, where the court said:

"All the children, under the act, should sue as parties-plaintiff, even though at trial a pecuniary loss to one child only can be shown. . . . Where all sue and less than that number have been damaged, the verdict must be confined to the loss shown by those damaged . . . even though the verdict and *distribution of the amount, under the act, must be made among all the children.*" (Italics supplied.)

This difficulty may disappear if we keep in mind that it is not the decedent's injuries and his losses for which the beneficiaries can claim, but for their pecuniary loss resulting from the tortious acts: The Pennsylvania R. R. Co. v. Butler, 57 Pa. 335; Gaydos et al. v. Domabyl, supra; and that an action for wrongful death is not a suit upon a pure tort (an act of violence or negligence inflicting an injury upon the person entitled to recover), but rather for deprivation of support of the wife and dependent children which they had the right to expect from the husband and father had his life not been taken by defendant's negligent act: Burns v. Pennsylvania R. R. Co., 219 Pa. 225; Milyak, Admr., v. Philadelphia Rural Transit Co., 300 Pa. 457; Alio et al. v. Pennsylvania R. R. Co., 312 Pa. 453.

The question of distribution was squarely met in Lewis v. Hunlock's Creek & Muhlenburg Turnpike Co., 203 Pa. 511, where the court said (p. 513):

"Appellants are children of the deceased and as such would share in his estate in case of intestacy, therefore the argument that they are entitled to share in the sum recovered as damages for his death. But the provision

read in connection with the whole act and the act of 1851 in pari materia is not so broad as this. The 'sum recovered shall go to them' is the phrase and by 'them' is meant the persons entitled to recover it. . . . The act first gives the right of action, and then prescribes the mode of distribution of the sum recovered, but that necessarily means distribution among those entitled to sue."

Again (on p. 514) :

"The appellants in the present case though children of the deceased were over age and the family relation had been severed. They had therefore no right of action."

The court also refers to North Pennsylvania R. R. Co. v. Robinson, 44 Pa. 175, stating:

"The subject was then (1863) new and there are some expressions in the opinion which would probably not be used now since the law has been more fully developed and distinctly defined."

In Leiby v. Hanlon et al., 24 D. & C. 508, where the husband brought suit for the death of his wife, an adult daughter, not maintaining the family relation to the deceased, sought to have one half of the amount distributed to her. This was refused, the court holding that adult children whose family relation with the deceased have been severed are not entitled to recover any share of the judgment. The court here considered the above-referred-to statement in Gaydos et al. v. Domabyl, supra.

We do not believe that Gaydos et al. v. Domabyl, supra, was intended to overrule the decision in Lewis v. Hunlock's Creek & Muhlenburg Turnpike Co., supra. If so, it would probably have done so in express terms. This has not been done. The entire decision is based on the family relation and the damages suffered by the particular members of the class, and certain references in the decision indicate otherwise, viz, at the top of page 532 the court said:

"If it were otherwise, children without regard to family relation could recover, and our rule as to the measure of damages of parents, husband and wife would not be

correct, and the rule as to reasonable expectation of pecuniary advantage likewise would be incorrect."

And finally, the question of distribution of damages was not involved in this case.

It has been recognized that distinction should be made in the distribution of damages where certain persons belonging to a class are barred from recovery: Kaczorowski v. Kalkosinski, supra; McFadden v. May, supra; and Minkin et al. v. Minkin, supra.

We believe it was the intention of the legislature that the word "them", as used in the act with relation to distribution, referred only to the persons of the class who maintained the family relation and who had been deprived of a reasonable expectation of pecuniary advantage from the deceased, in accordance with Lewis v. Hunlock's Creek & Muhlenburg Turnpike Co., supra.

Distribution should be made in accordance with the following order:

And now, March 8, 1941, if no exceptions are filed within 10 days after notice of the filing of this order, the administrator is directed to distribute and pay out the funds in his hands to the following persons and in the following amounts:

| | |
|---|---:|
| To the prothonotary or the person who has advanced any record costs . . . . . . . . . . | $19.43 |
| To Christina Turosik, funeral and other expenses advanced by her . . . . . . . . . . . | 485.00 |
| To Christina Turosik, widow of decedent, one half of the net fund for distribution. | 2,247.78 |
| To Citizens National Bank, guardian of the estate of Mike Turosik, minor child of the decedent . . . . . . . . . . . . . . . . . . . . | 1,997.79 |
| To Bloom & Bloom, attorneys, for services on behalf of Mike Turosik, minor . . . . . | 250.00 |
| | $5,000.00 |