## Reimard *v.* Bloomsburg & Sullivan Railroad Company, Appellant.

*Negligence—Railroads—Passenger—Remote and proximate cause.*

1. Where a railroad company negligently carries a woman passenger beyond the station where she is entitled to alight, and compels her to get off the train at the next station, in a dark night and in a drizzling rain, with two children and a large basket, and because of the mud she cannot reach the highway leading back to her destination, and walks along the tracks which she was told by a bystander was the best way to go, and while thus walking falls and is injured, the company will be liable to her in damages for the injuries sustained.

2. In such a case the railroad company ought to have reasonably anticipated that plaintiff would do just what she did. Its own neglect, therefore, was the proximate cause of the injury.

Argued April 12, 1910. Appeal, No. 394, Jan. T., 1909, by defendant, from judgment of C. P. Columbia Co., Sept. T., 1908, No. 372, on verdict for plaintiffs in case of Howard R. Reimard and Cora A. Reimard v. Bloomsburg & Sullivan Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before EVANS, P. J.

Plaintiff had her knee injured by tripping and falling while walking on a railroad track. The circumstances preceding the accident appear in the opinion of the Supreme Court.

Verdict and judgment for Cora A. Reimard for $2,000 and for Howard R. Reimard for $500. Defendant appealed.

*Errors assigned* among others were refusal of binding instructions for defendant, the refusal to charge that the act of the railroad company was not the proximate cause of the accident, and that the charge was inadequate on the subject of the plaintiff's poor physical condition or state of health prior to the accident.

*John G. Harman*, with him *L. E. Waller*, for appellant.—
Plainly, as the case thus stood, there was no question for
the jury to determine, and it became the duty of the
court to apply the law to this undisputed testimony:
Butler v. R. R. Co., 126 Pa. 160; Loughrey v. R. R. Co.,
201 Pa. 297; Ry. Co. v. Collins, 87 Pa. 405; R. R. Co. v.
Oberhoefer, 76 Ill. App. 672; Lewis v. Ry. Co., 54 Mich.
55; South Side Pass. Ry. Co. v. Trich, 117 Pa. 390;
West Mahanoy Township v. Watson, 112 Pa. 574.

*A. W. Duy* and *Fred Ikeler*, for appellees.—The plaintiff
was not guilty of contributory negligence in using the
tracks of the defendant to return to Sugarloaf Station:
R. R. Co. v. Werner, 89 Pa. 59; Ham v. Canal Co., 155
Pa. 548; Malone v. R. R. Co., 152 Pa. 390; Tilburg v.
R. R. Co., 217 Pa. 618.

The negligence of the defendant was the proximate
cause of the injury: Tilburg v. R. R. Co., 217 Pa. 618;
Malone v. R. R. Co., 152 Pa. 390.

Where the trial judge fails to charge upon some point
which counsel regard as essential, the judge's attention
should be called to it before the jury leave the bar, in
order that he may correct any omission: O'Toole v. Pub-
lishing Co., 179 Pa. 271; Humes v. Gephart, 175 Pa. 417.

OPINION BY MR. JUSTICE BROWN, May 24, 1910:

The main contention of the appellant is that the negli-
gence of the passenger after leaving its train is a bar to
recovery for the injuries she sustained.  A mere recital
of the facts testified to by her and other witnesses will be
a sufficient vindication of the correctness of the judgment
of the court below that it was for the jury to determine
whether her own negligence had been a contributing cause
of her injuries.

Cora A. Reimard and her two children, aged six and
eight years respectively, boarded a train of the defendant
between six and seven o'clock on the evening of Novem-
ber 23, 1907, at Main street, in the town of Bloomsburg.
That street, at its intersection with the railroad, was a

stopping place for trains, but the company did not have a ticket office at that point, and a brakeman, acting as conductor, called upon Mrs. Reimard for the fares shortly after the train started. She told him she wished to go to Sugarloaf Crossing, which had formerly been a regular station on the railroad, but about four years before had been discontinued as a regular stopping place for trains, and, under a certain rule or custom, the company would allow a passenger to alight there only upon the payment of a fare and a half to Laubach's Station, about a mile further north. Upon notifying the acting conductor that she wished to get off at Sugarloaf Crossing, he replied, "All right," and took out of the dollar bill that she gave him two fares to Laubach's Station—one for her at full rate and the other for the older child at half. He handed her the change and gave her two receipt slips. As the train approached Sugarloaf Crossing, Mrs. Reimard, not hearing the usual signal to stop, and fearing that it would not stop, asked a passenger to notify the conductor not to carry her beyond that station. The passenger did so, but the reply of the conductor was that it was too late, and the train did not stop until it reached Laubach's Station. When it arrived there a man in working clothes, evidently an employee of the defendant company, called out "Laubach's Station," and pushed the two children from the train down on to a switch or siding next to the track. Mrs. Reimard protested against getting off and said she would not do so until she could see Mr. Scott, the conductor. He appeared and the following took place between them, according to her testimony: "I would not get off and a man called to Mr. Scott, and Mr. Scott came out. Q. And who was Mr. Scott? A. The conductor. Q. Of the train? A. Yes, sir. Q. What did you say to Mr. Scott? A. I said, 'Oh, you should have left me off at Sugarloaf.' He said, 'I can't help it, you will have to get off here.' Q. What did you say to him? A. 'Oh, how in the world will I ever get back from here?' Q. What did you say to him as protesting about getting off? A. 'I

don't want to get off here, I don't want to get off here.'
He said, 'I can't help it, you will have to get off here.'
Q. Where were the children during this talk with Mr.
Scott? A. Down on the outside of the train.   Q. And
what did you do then when Mr. Scott told you, you would
have to get off? A. I started to get off." The night was
dark and there was a drizzling rain.   The station build-
ing at Laubach's was a small frame structure fronting on
the track, without light or heat, and was used at times
by tramps as a lodging place.   The highway, which the
defendant company insists Mrs. Reimard ought to have
followed in trying to make her way back to her father's
home, was about 130 feet from the station, and on the
night of the accident the only way to reach it was through
an opening between the north side of the station and
a pile of railroad ties and lumber which extended along
the railroad track 200 or 300 feet to a height of eight
or ten feet.   On the south side of the station there was
no opening, for another pile of lumber extended from
it, ten or twelve feet in height, for a distance of over
200 feet.   The opening on the north side of the station
leading to the highway led to it through water and mud
ankle deep.   Though Mrs. Reimard admitted that she
had often visited in that neighborhood and was familiar
in a general way with the highway leading past Laubach's
Station to Sugarloaf Crossing, she had been at the former
station only three or four times in her life.   She had not
been there for three or four years prior to the accident,
and never in the nighttime.   In the situation in which
she found herself, placed there by the defendant com-
pany—in the dark night and drizzling rain, carrying on
her arm a large, well-filled basket, with one of her children
suffering from sore eyes and both crying—not knowing
what to do nor where to turn, she cried out, "What will
we do; oh, how in the world will I get out of here?"   In
answer to this a bystander asked her where she wished
to go, and, having told him, she was directed to go down
the railroad, as it was her best way out, because, if she

started towards the highway, she and her children would get into mud over the tops of their shoes.

Under the foregoing state of facts, fully supported by the testimony, it would have been a strange jury that would have failed to find the defendant guilty of negligence, and the natural finding was that the woman, placed in a position of difficulty and great embarrassment by the act of the defendant, was not guilty of contributory negligence, for the rule is that, having been placed in such a situation by the act of the defendant, she was not bound to use the very best judgment and was in no fault if she acted in good faith and with reasonable prudence: Pennsylvania Railroad Company v. Werner, 89 Pa. 59; Malone v. Pittsburg & Lake Erie Railroad Company, 152 Pa. 390; Ham v. Delaware & Hudson Canal Company, 155 Pa. 548.

A second contention of the appellant is that, under the undisputed facts in the case, the court should have charged the jury that the negligence of the defendant, of which the plaintiffs complain, was not the proximate cause of the injuries sustained. The undoubted rule as to proximate cause is that the injury must be the natural and probable consequence of the negligence charged—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to follow from his act: Township of West Mahanoy v. Watson, 112 Pa. 574. The circumstances surrounding Mrs. Reimard when she was practically put off the train are presumed by the law to have been known to the defendant company, and, if so, it cannot be heard to say, as a matter of law, that it ought not to have reasonably anticipated that she would do just what she did. On the contrary, every juror in the case might have found and did find that what she did was what he would have done under the circumstances, and, therefore, the consequences to her in doing what she did as the result of the defendant's negligence are chargeable to it as the direct cause of them.

The thirteenth, and last, assignment complains of the failure of the court to adequately comment upon the evidence of the plaintiff's poor physical condition or state of health prior to the alleged injury, especially that relating to the knee alleged to have been injured by the defendant's negligence. The court did direct the attention of the jury to the contention of the appellant that the alleged permanent injury to Mrs. Reimard's left knee or leg was due to the open, running sore existing prior to the time of the alleged injury, and, if the defendant thought that more specific instructions ought to have been given as to this, it was its duty to ask for them. No one of the assignments of error can be sustained and the judgment is affirmed.