## Ritchey *v.* Cassone, Appellant.

250

Argued February 5, 1929.   Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, KEPHART, SADLER and
SCHAFFER, JJ.

*L. H. Rupp,* of *Butz, Rupp & Welty,* for appellant.—
Where a person's negligence does not cause or contribute
to an injury, no liability arises, and where there is no
evidence connecting the negligence of defendant with
the injury incurred by plaintiff, defendant is not liable:
P. & R. R. R. v. Spearen, 47 Pa. 300; Pittsburgh &
Southern R. R. Co. v. Taylor, 104 Pa. 306.

The question of proximate cause is to be left to the
jury on all the facts of the case where negligence is al-
leged, but where the facts are undisputed and an inter-

vening agency is manifest the court may withhold the evidence from the jury and decide it as a matter of law: Hoag v. R. R., 85 Pa. 293.

*A. G. Dewalt,* of *Dewalt & Heydt,* for appellee, cited, as to presumption that decedent used all reasonable means to escape: P. R. R. v. Weiss, 87 Pa. 447; Miller v. R. R., 67 Pa. Superior Ct. 249; Sontum v. Ry., 226 Pa. 230; Woodruff v. R. R., 231 Pa. 640; Hugo v. R. R., 238 Pa. 594; Patterson v. Ry., 210 Pa. 47.

As to proximate cause: Sewell v. Moore, 166 Pa. 570; Pittsburg v. Grier, 22 Pa. 54; Vallo v. Express Co., 147 Pa. 404; Gudfelder v. Ry., 207 Pa. 629; P. R. R. v. Hope, 80 Pa. 373; Hoag v. R. R., 85 Pa. 293; Boggs v. Tea Co., 266 Pa. 428; Howarth v. Express Co., 269 Pa. 280; Murray v. Frick, 277 Pa. 190; P. R. R. v. Kerr, 62 Pa. 353; Bunting v. Hogsett, 139 Pa. 363.

OPINION BY MR. JUSTICE FRAZER, March 18, 1929:

Plaintiff instituted proceedings to recover damages for herself and three minor children for the death of the husband and father, James I. Ritchey, fatally injured by falling from a firemen's ladder while attempting to escape from the fifth floor of the Lafayette Hotel at Allentown, in which he was a guest, during a fire that destroyed the entire building, of which defendant was at the time owner and operator. The jury found in favor of plaintiff and awarded damages, and the appeal here is from refusal of the court below to enter judgment n. o. v. for defendant.

We have gone over the record with care, and fail to find that the facts established by the evidence sustain a single assignment of error alleging absence of proof tending to establish negligence on the part of defendant. Appellant's counsel in their printed brief brush aside controlling facts unquestionably established by evidence, assume that plaintiff's case is based on presumptions merely, and claim the only facts proven are that de-

ceased found, while the fire was raging, a fire ladder against the building outside the window of his bedroom and attempted to use it as a means of escape; that he was safely outside the hotel when he lost his hold on the ladder and fell to the ground; that the fall caused his death and consequently the proximate cause was deceased's falling from the ladder and not the consequence of negligence on the part of defendant. There was thus, according to this reasoning, the intervention of an independent act on the part of deceased, disconnected with and unrelated to any dangerous condition created by negligence of defendant. But we are far from dealing merely with presumptions in this case. There is unquestionably a sufficiency of reliable evidence upon which the jury could base their finding and which fully justified the court below in its refusal to disturb that verdict.

The hotel building in question was an old structure, five stories high, with a stairway and elevator, each reaching from the first to the fifth floor and a hallway on each floor, upon both sides of which bedrooms opened, including that on the fifth floor occupied by Ritchey. At the end of the hallway was an entrance to the fire escape platform, closed off by a window of two parts, in each of which was a pane of glass, the lower part being nearly two feet from the floor of the hall, and to reach the fire escape either the upper portion must be lowered or the lower part raised. The two parts of this window were closed and fastened, as plaintiff claims, by a latch, and it is contended for plaintiff that on the night of the fire the window was thus closed and latched and that Ritchey, discovering his peril, rushed to this entrance to the fire escape, but being unable to open the latch, was compelled to seek other means of flight and was obliged to attempt to escape by means of the fire ladder, from which he fell. The evidence as to the latch in question and its condition at the time of the building's destruction was conflicting. One witness, a guest at the hotel,

occupying a room near Ritchey's, testified that on the afternoon some hours before the fire, which broke out about 2:30 in the morning, examined the window at the fire escape and found each part fastened by a latch that was rusty and old. Another witness, also a guest having a room on the same floor, when he saw flames reaching that hall, rushed to the fire escape entrance and finding it impossible to open the latch, broke the glass and succeeded in reaching safety by way of the fire escape. On the other hand, defendant and witnesses called in his behalf testified that while there was a latch to the window opening on the fire escape, the catch had been broken off before the fire and could not be used to fasten the two parts of the window.

The immediate question at this point is, what were the acts and movements of deceased in his efforts to escape from the burning building? From the uniform testimony of witnesses who escaped from the fifth floor during the fire, it is plainly evident that when Ritchey found himself in danger, there was no other way to safety remaining except by the fire escape, for at that moment flames were coming up the stairway and also the elevator shaft. Did he attempt to reach safety by the remaining means open to him? It is contended by appellant there was no proof that he reached the fire escape entrance, or had endeavored to use it, and consequently any presumption as to his attempted use of it "faded out of the case." It is true, so far as the record discloses, no person saw deceased immediately at the window opening upon the fire escape; but there is direct and uncontradicted testimony that he left his room and was seen hurrying towards that means of escape. A witness, Harding, occupied a room near that of Ritchey. He was aroused from sleep by a guest in an adjoining apartment knocking against the wall and shouting that the house was on fire. Harding, thus awakened, opened his door, saw the flames coming out of the elevator shaft and up the stairway, and at the same moment saw

Ritchey rush past him towards the fire escape. His testimony of this fact is clear: "The first thing I done was to get up, turned on my light, there was no light coming on; I turned the key in my door, I stepped out, when I saw this man darting by. Q. Which man do you have reference to? A. Mr. Ritchey. Q. Mr. Ritchey occupied a room on the same floor? A. Yes, sir,...... Q. You say you saw him darting past; in what direction was he going? A. Towards the fire escape." Witness returned to his room, closed his door and finally escaped by means of a fire ladder that had been run up to his window. It would certainly be an unwarranted display of incredulity not to see in this direct and convincing testimony the fact that in the moment of extreme peril Ritchey's thought and purpose were to reach the fire escape; and since flames were not heading him off in that direction, it would be beyond the bounds of common sense to assume he abandoned that means of safety not only before he could test it, but even before he reached it. "As the love of life and the instinct of preservation are the highest motives for care in any reasoning being, they will stand for proof of care until the contrary appears": Cleveland & Pittsburgh R. R. Co. v. Rowan, 66 Pa. 393, 399. The evidence, including the presumptions, would justify the conclusion that deceased reached the window, barring off ingress to the fire escape, and, being unable to unfasten the rusted latch, hastened back to his room. This effort he could make as the flames had not reached that part of the hallway, a fact established by the testimony of another guest on the same floor, who testified that he rushed from his room to the fire escape, and finding it impossible to open the window broke the panes of glass closing off the platform of the fire escape and succeeded in reaching the ground by that means. He testified: "I reached the window and tried to escape from this window; I tried to raise the window, but I couldn't raise it; so I crashed the glass out, then I escaped that way." Undoubtedly

this escape followed the attempt of Ritchey, since, if the latter had found the glass broken and the entrance to the fire escape open he would of course have used that exit to safety. These facts effectively dispose of appellant's claim that had deceased endeavored to reach the fire escape he must have done so through a zone of flames and smoke. There was undoubtedly smoke throughout the hallway, as the witness who broke the glass testified; he, however, made no mention of flames being in that part of the hallway and he arrived at the fire escape without burns or other injury. Ritchey, who preceded him, could not well have been hindered, in his efforts to escape, to any greater extent than this witness was. Deceased was an experienced traveling salesman, accustomed to hotel arrangements, and as the evidence proves and sound presumptions show, promptly took advantage of whatever means he saw available to reach a place of safety. "The natural instinct which leads men in their sober senses to avoid injury and preserve life, is an element of evidence": Allen v. Willard, 57 Pa. 374, 380.

It is true, as counsel for appellant states, there is no presumption of negligence arising merely from the fact that fire breaks out in a hotel. In the present case defendant owned and operated the hotel at the time of the destruction of the building. He was not of course an insurer of the safety of his patrons; but he was bound to exercise such watchfulness and care as would reasonably secure their safety while guests in this hotel. Destruction of a hotel may not be anticipated, but it is generally a possibility, and that contingency was recognized by defendant in the present case by the existence of the fire escape, to which unobstructed and unhindered access was a first and absolute necessity. Common prudence required that access to the exit be kept easily available and ready for use at all times. One who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences resulting from

his carelessness: Murray v. Frick, 277 Pa. 190, 194. We find no evidence that guest rooms of the hotel were provided with ropes or other safety appliances for use of patrons in case of fire; when Ritchey discovered the peril in which he was placed, no other way to safety remained to him except by the near-by fire escape; other guests of the hotel who preceded and followed him there failed to open the window barring egress to the platform of that safety device. He apparently experienced the same trouble others met with and rushing back to his room found a fire ladder had been run up to his window, and, in attempting to descend by that means, either from suffocation or weakness, being sixty-two years of age, fell and sustained injuries that resulted in his death. The question whether these facts constituted a continuous succession of events and whether the death of Ritchey was the natural and probable consequence of the primary cause, the negligence of defendant in not maintaining an unobstructed access to the fire escape, was presented to the jury by the trial judge in his charge in fair and careful language and the jury so found.

Judgment affirmed.