**PALMER v. MOREN (WILEY et al., Third Party Defendants).**

No. 486.

District Court, M. D. Pennsylvania.

April 23, 1942.

Robert M. Bernstein, of Philadelphia, Pa., and Louis A. Fine, of Honesdale, Pa., for plaintiff.

John Memolo, of Scranton, Pa., for defendant.

Edward J. Kelly and W. J. Fitzgerald, both of Scranton, Pa., for third-party defendants.

JOHNSON, District Judge.

This action was brought by the plaintiff, a citizen of the State of New York, as trustee ad litem on behalf of himself, as father, and of Edith Palmer, as mother, of Kenneth Palmer, deceased, to recover damages for the death of Kenneth Palmer under the Act of 1855, P.L. 309, 12 P.S. § 1602, as amended, and the Pennsylvania Rules of Civil Procedure, No. 2202(b), 12 P.S.Appendix. The case was tried before the court and a jury and a verdict rendered for plaintiff in the sum of $4,553.53. The defendants have moved to dismiss the action because the court does not have jurisdiction; to set aside the verdict and enter judgment for the defendants; and, if these motions are refused, for a new trial.

On August 3, 1939, shortly after midnight, daylight saving time, plaintiff's decedent, Kenneth Palmer, a minor eighteen years of age, was riding as a passenger in the front seat of the automobile being operated by defendant, Lewis C. Moren, on route 611, about a mile and a half outside Stroudsburg in the direction of Delaware Water Gap. Defendant's car and a semi-trailer belonging to Frederick E. Wiley, individually and trading as Wiley's Chester Auto Express, being operated by Alfred J. Hill, Jr., both of whom are third-party defendants in this action, collided, resulting in injuries to Kenneth Palmer from which he died a few minutes later. Plaintiff's decedent jumped from defendant's car immediately prior to the impact and was found lying in or near the center of the highway after the vehicles came to rest. By stipulation of counsel the agency of the driver of third-party defendant's, Wiley's, truck was admitted as well as that the death of Kenneth Palmer resulted from the accident.

Suit was first instituted by the plaintiff against Lewis C. Moren, the driver of the car in which the decedent was a passenger. Defendant then moved for leave to make Frederick E. Wiley, individually and trading as Wiley's Auto Express, the owner of the truck involved in the accident, and Alfred J. Hill, Jr., the driver, third-party defendants. This motion was granted. The jury rendered a verdict in which they found the defendant, Lewis C. Moren, and Frederick E. Wiley and Alfred J. Hill, Jr., third-party defendants, all guilty of negligence, awarding the sum of $4,553.53 to the plaintiff.

The motion to dismiss will first be considered. Under Rule 12(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the objection to the jurisdiction of the subject matter is not waived by failure of a party to present it by

motion or answer before pleading further if an additional pleading is permitted. The plaintiff contends that defendant Moren is barred from suggesting the question of the court's jurisdiction because of an averment in paragraph one of the complaint that the "matter in controversy exceeds, exclusive of interest and costs, the sum of Three Thousand Dollars ($3,000.00)," which was admitted by defendant's answer although it was neither admitted nor denied by the answer of the third-party defendants. This contention is without merit. Upon this subject it was stated in Lawyers Trust Co. v. W. C. Maguire . & Co., Inc., et al., D.C.Del. March 19, 1942, 2 F.R.D. 310. Neither the consent of the parties nor their admissions will confer jurisdiction upon a federal court where the facts of the case as revealed by the record deny the existence of such jurisdiction, and it is the duty of the court to investigate its jurisdiction where doubt exists as to whether or not the actual facts will support such jurisdiction. Citing Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001; Royalty Service Corporation v. City of Los Angeles et al., 9 Cir., 98 F.2d 551".

■ The measure of damages in an action for wrongful death by the parents of a deceased minor according to a long line of Pennsylvania cases is "the present worth of his earnings or the present worth of the probable value of his services until he reaches the age of 21, less what the parents would be required in the meantime to pay for his maintenance. [Citing] Peters v. Bessemer & Lake Erie R. R., 225 Pa. 307, 74 A. 61; Hoon v. Beaver Valley Traction Co., 204 Pa. 369, 54 A. 270; Hook v. Bell Telephone Co., 81 Pa.Super. 120; McCleary v. Pittsburg Rys. Co., 47 Pa.Super. 366, 374; Esher v. Mineral Railroad & Mining Co., 28 Pa.Super. 393." Gaydos et al. v. Domabyl, 301 Pa. 523, 533, 152 A. 549, 553. To this may be added the medical expenses arising from the injury and funeral expenses. Frantz v. Gower, 119 Pa.Super. 156, 158, 180 A. 716. The age, health and mental condition of the minor and its probable earnings as reflected by the occupation and circumstances in life of the parents also should be considered. Walker v. Perkins, 319 Pa. 469, 181 A. 511. The value of services and gifts rendered by the decedent may be taken into consideration in arriving at the pecuniary loss sustained by his death provided they have been bestowed with such frequency and regularity as would lead one to expect their continuance. Gaydos et al. v. Domabyl, supra; Schnatz v. Phila. . & Reading R. R., 160 Pa. 602, 608, 28 A. 952.

The proof on the question of damages was that plaintiff's decedent had previously been earning $19.80 per week during which time he lived at home and turned over $15 per week to his parents who kept him. The father testified that it would cost about $7 per week for his maintenance. At the time of his death he was earning between $5 and $8 per week, in Moren's employ and his living, giving his parents $6 per week. The testimony indicated that plaintiff's decedent was an industrious and ambitious boy with no bad habits and that he intended to obtain a more remunerative position. It was stated that he was in the habit of making regular gifts of clothing and similar items to his mother and sister and that he helped around the house and garden when he was home every weekend. The funeral expenses amounted to $353.05. Defendants contend that on a mathematical basis, with 117 weeks to go before decedent's twenty-first birthday, the damages proved would total only slightly more than $1,100 and that, the jurisdictional amount of over $3,000, exclusive of interest and costs, was not involved. 28 U.S.C.A. § 41(1).

■ In actions ex delicto, where the damages recoverable are unliquidated, the amount in controversy is the sum alleged to be due in the plaintiff's pleading, Fernandina Shipbuilding & Dry Dock Co. v. Peters, D.C., 283 F. 621; Fowler v. Baker, D.C., 32 F.Supp. 783, unless it appears to be purely colorable for the purpose of conferring jurisdiction, O. J. Lewis Mercantile Co. v. Klepner, 2 Cir., 176 F. 343; Wilderman v. Roth, 3 Cir., 17 F.2d 486. Jurisdiction exists where the requisite amount is set out in the complaint unless it appears to a legal certainty "that the plaintiff could not have had any reasonable expectation that she could recover, exclusive of interest and costs, the jurisdictional amount." Wilderman v. Roth, D. C., 9 F.2d 637; New York Life Ins. Co. v. Johnson, 8 Cir., 255 F. 958. Under the pleadings and the evidence in this case the court is not satisfied that the amount of damages laid in the complaint is collusive or colorable for the purpose of giving this court jurisdiction. It does not appear to a legal certainty that the plaintiff did not reasonably expect to recover more than the amount required to give this court jurisdiction. In the case of Evans v.

Lehigh Coal & Navigation Co., D.C., 205 F. 637, where the averment of damages and proof at the trial almost coincided with that in this case, the court refused to grant a motion to dismiss. The motion to dismiss should be overruled in this case.

In support of their motions to set aside the verdict and judgment for the plaintiff entered thereon and to enter judgment for the defendants, both defendant, Moren, and third-party defendants, Wiley and Hill, contend that there was no evidence of any negligence on their respective parts which warranted the court's submitting the question of negligence to the jury. "On a motion for judgment n. o. v., the testimony should not only be read in the light most advantageous to plaintiff, all conflicts therein being resolved in his favor, but he must be given the benefit of every fact and inference of fact, pertaining to the issues involved, which may reasonably be deduced from the evidence." Mountain v. American Window Glass Co., 263 Pa. 181, 106 A. 313; Moyer v. Pittsburgh, Mars & Butler Railway Co., 275 Pa. 363, 119 A. 469. Examining the proof with this rule in view, the facts appear as follows: Defendant Moren accompanied by the deceased, Kenneth Palmer, was driving in the direction of Delaware Water Gap on route 611 a short distance beyond Stroudsburg at a little past midnight, D.S.T. Seeing about 1200 feet ahead the lights of an approaching vehicle, which was a semi-trailer belonging to Wiley and operated by Hill, Moren drove to the right at a point, the beginning of a third lane of macadam beside the two-lane concrete highway near a fruit stand. After traversing this macadam for a distance of approximately 125 feet, the front and rear wheels of Moren's car on the right-hand side suddenly dropped into the unfinished portion of this third lane which had been left unguarded. At this point the third lane consisted of crushed stone 12 feet wide, a little more than 8 inches below the surface of the adjoining concrete pavement. Moren stated that he was traveling about 25 miles per hour when he dropped into the unfinished lane, that he immediately applied his brakes and shifted into low gear to get back on the concrete lane pointing his car angularly to the left, that he had gotten back on the concrete after driving for 35 or 40 feet over the crushed stone when he saw the approaching vehicle which he had previously noticed make a sudden turn towards him when it was about 35 or 40 feet away whereupon he brought his car to a standstill. Just before the collision Kenneth Palmer, who had been riding in the front seat with Moren, shouted to Moren that he should jump. Palmer opened the door on the right side and jumped from the car. The right side of the truck (semi-trailer) and the right side of Moren's car sideswiped each other as appeared from photographs of Moren's car which were offered revealing dents high on the two right fenders and over the door. When the vehicles came to rest Moren's car was some distance over the center line separating the two concrete lanes. Moren stated that his right wheels remained on the south-bound lane, the direction in which he had been driving, and that his car had been pushed over into the other lane by the force of the impact. The truck in which Hill was riding overturned on its right side at nearly a right angle with the highway with the tractor resting on the berm beside the unfinished third lane to the right of the south-bound lane and the remainder of the truck extending over the unfinished third lane and the south-bound concrete lane and projecting about two feet over into the north-bound lane. Traffic was routed over the north-bound lane until the truck was removed several hours later. Both Moren and Hill were unhurt. Palmer was found in a dazed or unconscious condition behind the car in which he had been riding, and between the car and the rear of the trailer, lying near the center of the two concrete lanes. A passing car took Palmer to the hospital but he died before he arrived at the hospital. Third-party defendant, Hill, the driver of Wiley's truck, testified that he was driving toward Stroudsburg at a speed of between 30 and 35 miles per hour carrying a 19,000 pound load of oil in addition to the weight of the equipment which was 10,000 pounds; that he observed Moren's car coming towards him about 1,000 feet away; that he put his lights on low beam shortly after which he noted that Moren's car had gotten off the edge of the road which was guarded by warning lights at the place where the truck was traveling. Hill stated that he continued to watch the car and that he slowed down to about 25 or 30 miles per hour when he was about 100 feet away because it appeared that Moren's car was out of control, and pulled over on the berm to his right, thinking he could pass safely. When the vehicles were about 30 feet apart, according to Hill,

Moren's car swerved directly across the road in front of him and he suddenly swung his equipment sharply to the left to avoid an impending collision but the vehicles struck each other at a point about 4 feet over the center line in the northbound lane upon which Hill was driving. Hill drove this particular route about once a week. Neither Moren nor Hill saw Palmer from the moment he jumped from Moren's car immediately before the impact of the collision until he was found lying in the center of the highway after the accident; there was no testimony showing which vehicle, if any, struck him.

From the evidence it appears that deceased was a guest of Moren's on a pleasure trip. Under these circumstances the driver owed his passenger the duty to exercise ordinary or reasonable care to avoid injuring him by the operation of his automobile. It is not necessary that his conduct be shown to be gross negligence to make him liable for injuries resulting from his neglect. Cody v. Venzie, 263 Pa. 541, 107 A. 383; Ferrell v. Solski, 278 Pa. 565, 567, 123 A. 493; Ravis v. Shehulskie, 339 Pa. 161, 14 A.2d 70. It cannot be held as a matter of law that Moren exercised ordinary care when he drove into the unfinished third lane to his right or when he endeavored to get back on the higher concrete pavement in the face of an oncoming vehicle. This question was one of fact for the jury, and the request for a directed verdict was properly refused.

One of the reasons assigned by the third-party defendants, Wiley and Hill, for setting aside the verdict and judgment and entering judgment for them is that there is no evidence of any negligence on their part which warranted submitting the question to the jury. By stipulation of counsel prior to the trial it was admitted that Hill was acting on Wiley's behalf at the time of the collision; therefore, under the familiar principle of respondeat superior the negligence of the driver acting in the scope of his employment is the negligence of his employer and for injuries resulting therefrom the latter is liable. Wallace v. Keystone Automobile Co., 239 Pa. 110, 86 A. 699. There was an irreconcilable difference between the stories of the driver of the car and the driver of the truck, Moren testifying that the collision occurred on his side of the highway which would be Hill's left side and Hill testifying that Moren was on Hill's north-bound lane

and that he had to turn to the left to avoid striking Moren's car. While it would not be negligence per se for a vehicle to be driven on the left side of the road, Boose v. Walker, 86 Pa.Super. 218, 220; Post v. Richardson, 273 Pa. 56, 116 A. 531, it is the duty of drivers of cars approaching from opposite directions to keep to the right. Act of 1929 P.L. 905, sec. 1004, 75 P.S. § 521. The conflicting evidence on the question whether Hill was properly keeping to the right of the center of the highway was sufficient, alone, to make the issue of negligence one for the jury. Amey v. Erb, 296 Pa. 561, 564, 146 A. 141. Even if Hill's story that he was driving upon his right side of the road at the time of the collision were accepted as true, that would not have warranted the direction of a verdict in favor of the third-party defendants. "The mere fact that defendant was on the right side of the road does not determine the presence or absence of negligence. There is no law that allows one who is on that side of the road to run down anything in his path." Hoover v. Reichard, 63 Pa.Super. 517. Even if it were conceded that Moren's car suddenly veered across the road in front of Hill's truck thereby creating a sudden emergency which would have relieved him from responsibility for an honest mistake of judgment in trying to avert a collision, Amey v. Erb, supra, still the duty to exercise the reasonable care of a prudent man under the same circumstances would exist and whether he acted as would a reasonably prudent man under like conditions was a question for the jury. Huddy: Encyclopedia of Automobile Law, Vol. 3–4, page 56 (Ninth Edition). There was also evidence from which the jury could have found that the driver of the truck did not exercise reasonable care considering all the surrounding circumstances with regard to the speed and control of his vehicle after he had perceived that Moren's car was in some kind of difficulty. A driver is entitled to assume that other drivers will observe the rules of the road and take proper precautions, Christ v. Hill Metal & Roofing Co., 314 Pa. 375, 171 A. 607, only if there is nothing which in the exercise of reasonable care would put him on notice that such a course would not be pursued. Hill, having observed Moren's lights bobbing when he commenced to travel the unfinished third lane, was bound to operate his truck at such speed and under such control as would permit him to avoid doing injury in any situa-

tion that was reasonably likely to arise. Huddy: Encyclopedia of Automobile Law, Vol. 3–4, page 87. Whether Hill exercised reasonable care under all the circumstances, as it was his duty to do, was properly left for the jury's determination. There being conflicting evidence as to which driver was responsible for the creation of the sudden emergency, it could not be said, as a matter of law, that Hill was not negligent. Casey v. Siciliano, 310 Pa. 238, 165 A. 1.

Another reason advanced by all defendants for setting aside the verdict and entering judgment in their favor is that the plaintiff's proof showed that decedent was guilty of contributory negligence in jumping from Moren's car immediately before the collision. Moren testified that at the time Palmer jumped from the car it appeared to him that they were in imminent danger, and the evidence also showed that the point of contact between the two vehicles was the right side of each, the side upon which Palmer was riding in the front seat. The negligence of Moren could not be imputed to his passenger, Palmer, so as to preclude plaintiff from recovery, it not appearing that Palmer concurred in the driver's negligence. To Use of Kuhns v. Conestoga Traction Co., 290 Pa. 303, 309, 138 A. 838; Alio v. Pennsylvania R. R. Co., 312 Pa. 453, 167 A. 326, 90 A.L.R. 980. Whether Palmer's jumping from the car in which he was riding when a collision with a large semi-trailer on his side appeared imminent constituted negligence under the circumstances was a question for the jury to decide after being instructed that one who was placed in sudden apparent peril by the negligence of one or both of the drivers involved in the accident could not be charged with failure to exercise reasonable caution if the course which he chose in the emergency proved after the event to have been a mistaken one. Wilson v. Consol. Dressed Beef Co., 295 Pa. 168, 145 A. 81; To Use of Kuhns v. Conestoga Traction Co., supra. "On the other hand, if he leaves a moving machine and thereby receives an injury, it may be proved subsequently that he would have escaped injury had he remained with the machine, but he is not necessarily charged with negligence because he took the wrong course in the emergency." Huddy: Encyclopedia of Automobile Law, Vol. 5–6, page 268–269 (Ninth Ed.).

It has been pointed out that there is no evidence as to which vehicle, if any, inflicted the injuries from which Kenneth Palmer died. In the view we take of this case the absence of proof upon this subject is unimportant. It clearly appeared from the evidence that plaintiff's decedent sustained his injuries in his effort to escape from the perilous situation which had arisen. There was evidence from which the jury was warranted in finding that the negligent conduct of both Moren and Hill operated simultaneously to produce the threatened danger to decedent which he was attempting to avoid at the time he suffered the injuries which caused his death. It is well settled that for any injuries sustained through the normal efforts of a person to avoid harm threatened by the negligent conduct of others, those, whose negligent acts have concurred in causing the threatened harm, are liable. Ritchey v. Cassone, 296 Pa. 249, 145 A. 822; Lehner v. Pittsburg Railways Co., 223 Pa. 208, 72 A. 525, 132 Am.St.Rep. 729, 16 Ann.Cas. 83; Restatement of the Law of Torts, 445. The jurors in the case might have found and did find that what Palmer did was what they would have done under the circumstances, and, therefore, the consequences to him in doing what he did as the result of the defendants' negligence are chargeable to them as the direct cause of the injuries. Reimard v. Bloomsburg & Sullivan R. R. Co., 228 Pa. 384, 388, 77 A. 560. After carefully considering all the proof we cannot say that there was not sufficient evidence to sustain the verdict or that it was against the weight of the evidence.

Both defendant, Moren, and third-party defendants, Wiley and Hill, have assigned reasons in support of motions for a new trial, none of which are of sufficient merit to warrant discussion except that the verdict and damages are excessive. A new trial will not be granted on the ground that the verdict is excessive simply because the jury has awarded greater damages than the judge himself would have done. The amount of the verdict must be such that it shocks the conscience of the court since ordinarily the determination of damages is the province of the jury. Filer v. Filer, 301 Pa. 461, 152 A. 567. "In all cases where the damages, in the opinion of the court are too large, an order may be made for a new

trial, unless the plaintiff stipulates to remit a portion of the verdict," 6 Standard Pennsylvania Practice 360; Kennon v. Gilmer, 131 U.S. 22, 9 S.Ct. 696, 33 L.Ed. 110; Becker Bros. v. United States, 2 Cir., 7 F.2d 3. Taking into consideration the actual earnings of plaintiff's decedent, the court is of the opinion that the verdict of $4,553.53 rendered by the jury in this case is so excessive that it would be an abuse of discretion to allow it to stand. An award of $3,200 would, in our opinion, amply compensate plaintiff for the loss of his son's earnings and the other damages sustained as a result of his death.

Now, this 23rd day of April, 1942, it is ordered that if the plaintiff, Willis Palmer, trustee ad litem, shall file in the office of the clerk of this court within the next ten days a stipulation or remittitur agreeing to the reduction of so much of the verdict in this case as is in excess of $3,200, the motions of defendant, Lewis C. Moren, and of third-party defendants, Frederick E. Wiley, individually and trading as Wiley's Chester Auto Express, and Alfred J. Hill, Jr., for a new trial shall be and they, hereby, are denied, and the verdict rendered against the defendant and the third-party defendants shall be reduced to $3,200 and judgment entered thereon for that amount: but if the plaintiff shall not so stipulate, within ten days, the motions of defendant and third-party defendants for a new trial will be granted.